HOUSTON & TEXAS CENTRAL RAILROAD COMPANY v. R. J. CROOK.

Decided May 14, 1909.

**1.—Negligence—Escape of Noxious Substance from Premises—Damages.**

It was the duty of a railway company to use ordinary care to prevent the waste oil, which .in the proper conduct of its business may have escaped from its engines and tanks without negligence on its part, from flowing off its premises and causing damage to persons living near said premises, and a failure to use ordinary care in this regard rendered it liable for damages so caused.

**2.—Damages—Offensive Odors.**

Evidence held to sustain a finding that the offensive odors, caused by the flow of oil into a ravine near plaintiff's home, were such as to deprive her of the use of a part of her home whenever the wind blew from said ravine toward her house, and that by this deprivation and the discomfort suffered by her she was damaged to the extent of five hundred dollars.

Appeal from the District Court of Waller County. Tried below before Hon. Wells Thompson.

*Baker, Botts, Parker & Garwood* and *W. B. Garrett,* for appellant.

*W. W. Crook* and *A. J. Harvey,* for appellee.

PLEASANTS, CHIEF JUSTICE.—This suit was brought by appellee against appellant to recover the sum of $2,000 as damages for personal discomfort suffered by her,· and for decrease in the value of her home caused by the alleged negligence of the appellant in permitting oil to escape from its premises and flow down a ravine or branch near appellee's home. The defendant answered by general denial. The cause was tried by the court without a jury, and judgment was rendered in favor of plaintiff for the sum of $500.

At the request of defendant the trial court filed his conclusions of fact, which are in part as follows:

"1. I find the facts in this case to be those as stated in the testimony of the witnesses W. W. Crook and the plaintiff, Mrs. R. J. Crook, viz.: That defendant had erected oil tanks on its right of way near the residence of the plaintiff, and that these tanks were kept full of crude fuel oil.

"2. That the defendant was careless or negligent ·in ·allowing large quantities of this oil to escape and waste from these tanks.

"3.   That this escaping oil flowed into a ravine and down this ravine onto and around plaintiff's residence lot and near the plaintiff's house.

"4.   That defendant's attention was often called to this fact, but that defendant did not stop this flow of oil for a long time.   But that afterwards the defendant made an attempt to check the flow of oil by putting in two oil traps, but that this did not entirely remedy the matter.

"5.   That this oil as it flowed upon and around the plaintiff's premises was very offensive to plaintiff and her family by reason of the gases arising from it.

"6.   That this offensive smell was so great that the plaintiff and her family could not occupy those parts of her residence that fronted the ravine down which the oil flowed whenever the wind blew from that direction, and that she was forced to close her windows to keep out the offensive smell of oil.

"7.   I find that all of the testimony offered by the defendant was and is of the negative character, not so positive as that of the plaintiff, and that the defendant's witnesses were not in a position to judge of the facts as well as the plaintiff."

W. W. Crook testified for plaintiff as follows: "I am acquainted with plaintiff's premises—her home; she has resided there since 1887. Six or seven years ago defendant erected oil tanks just north or northeast of plaintiff's homestead block about 150 yards distant.   They have machinery there that pumps the oil from the oil cars into a big tank and from the big tank into an elevated tank that is used in filling the engines; from those tanks and from pumping it in there is a large amount of oil wasted on the ground.   There is a depression there; it hardly makes a gully at that point, but makes a gully lower down, which flows through the eastern portion of plaintiff's home block No. 66.   The gully runs north and south and across the street, lying south of block No. 66, and then turns southwest.   The flow of the oil has been running down the gully, not daily, but every week it flows down that branch; it seems like it is waste oil, more at times than at other times.   It is about one hundred yards from plaintiff's residence to that oil pool, and about one hundred feet from plaintiff's residence to the branch and oil pool and that pool there, and this pool has been there nearly ever since the oil tanks were erected, more so in the past one or three years oil has been coming down there.   The plaintiff, through her sons, have tried to have them take notice of it, and they have had notice of it, to try to get them to stop it in some way.   That pool of oil is nearly south of plaintiff's residence and it is nearly unbearable at times; it has been abated since filing this suit; a little bit comes down when we have a big rain.   Before filing of this suit and three or four months after, just pools of oil run down there.   I tried to get the defendant or their agents to check this oil, and they had notice of the fact that the oil was escaping; their attention had been called to it about three years before the filing of this suit; a negro residing about seventy-five yards from plaintiff's residence brought suit against the defendant; they investigated the matter; their attention has been called to it time and time and time again.   Capt. Crowder's—one of the de-

fendant's employes—attention was called to it, also Mr. Groce; they saw the place there and saw the escaping oil flowing down this depression or gully; it was a pool at that time; that was about two or three years before this suit was filed, they made no attempt that I know of after this was called to their attention to stop or check the flow of oil. At the time of that investigation the oil extended into those pools opposite plaintiff's premises, and since that time I had conversations with Capt. Crowder relative to the flow of oil there.

Mrs. Crook, plaintiff, testified: "I am the plaintiff; charge defendant with creating a nuisance by permitting oil to flow down a gully east and south of my premises, creating a stink and gas, also a nuisance. The last three or four years it has been very offensive around the house. I do not sit on the south porch, the odor from the oil stinks so; this smell has been there all along for two or three years. We have to keep the dining-room closed down I know. The disagreeable gases and the odor from that oil has not stopped yet; it is very disagreeable. It seems like about a year ago that oil run down there and stood in pools. I know that there is a terrible scent there, I can tell you that right now."

We think this testimony sustains the findings of the trial judge that defendant was careless and negligent in allowing the oil to escape from its premises and flow into the ravine near plaintiff's home, and that by reason of the disagreeable odors arising from said oil plaintiff's use of her home has been interfered with and she has been caused much personal discomfort and annoyance and thereby damaged in the amount found by the court.

By its first assignment of error appellant assails the judgment on the ground that there is no evidence to sustain the finding that the oil was negligently allowed to escape from appellant's tanks and engines. It may be conceded, as contended under this assignment, that there was no way in which appellant could handle the oil without there being waste or leakage, and therefore appellant was not negligent in allowing the oil to so escape from its tanks and engines, and yet appellant would be liable for the damages claimed in this case by reason of its failure to use proper care to prevent the oil so escaping from flowing into the ravine near plaintiff's residence. The evidence leaves no room for doubt that this could have been prevented and that in fact it was, shortly before this suit was tried, remedied to a large extent by the use of oil traps. It was the duty of the appellant to use ordinary care to prevent the waste oil, which in the proper conduct of its business may have escaped from its engines and tanks without negligence on its part, from flowing off of its premises and causing damage to persons living near said premises, and a failure to use ordinary care in this regard would render it liable for damages so caused. (Missouri P. Ry. Co. v. Platzer, 73 Texas, 123; Houston & T. C. R. R. Co. v. Anderson, 44 Texas Civ. App., 394.)

This conclusion disposes of the several assignments of error which complain of the judgment on the ground that there is no evidence to sustain a finding of negligence on the part of defendant in causing plaintiff's damage, and all of said assignments are overruled.

The third assignment is as follows: "The court erred in finding

that the evidence of the defendant as to the escape of the oil was only of a negative character, and that the defendant's witnesses were not in a position to judge of the facts as well as plaintiff's, because such finding is not only contrary to the overwhelming weight of the testimony, but is without evidence legally sufficient to sustain the same, in that all the evidence showed that the plaintiff knew nothing of the manner of the escape of said oil, nor what the defendant did to prevent the same, nor whether it had been stopped, nor the cause of the scum of oil on the water that ran down said ravine; whereas, the witnesses for the defendant were positive, and showed by affirmative evidence that the escape of the oil had been stopped except the washing down the stream by rain the little waste oil on the surface of the track that could not be prevented, and showed that they were testifying from their own personal knowledge and observation."

There is no merit in this assignment. It is clear that the court in the finding complained of referred to the testimony in regard to disagreeable and offensive odors and the discomfort caused plaintiff thereby, and it is obviously true that plaintiff, who lived on the premises and suffered the annoyance, was in a better position to judge of the character and extent of the discomfiture caused her than were witnesses passing along the street near her residence or who lived near her.

The evidence sustains the finding that the offensive odors caused by the flow of the oil into the ravine near plaintiff's home were such as to deprive her of the use of a part of her home whenever the wind blew from said ravine toward her house, and that by this deprivation and the discomfort suffered by her plaintiff was damaged to the extent of $500.

We have considered all of the assignments, and in our opinion none of them present any error which would authorize a reversal of the judgment, and it is therefore affirmed.

*Affirmed.*